**SO ORDERED.**

**SIGNED this 9th day of February, 2017.**



BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| David G. Cook, | ) | Case No. 15-81220 |
| | ) | |
| Debtor. | ) | |
| ——————————————— | ) | |
| | ) | |
| Gully Brook Revocable Trust | ) | |
| and Tasha's Way Revocable | ) | |
| Trust, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 16-09015 |
| | ) | |
| David G. Cook, | ) | |
| | ) | |
| Defendant. | ) | |
| ——————————————— | ) | |

**MEMORANDUM ORDER DENYING
MOTION FOR SUMMARY JUDGMENT**

This adversary proceeding came before the Court for hearing
on November 22, 2016 (the "Summary Judgment Hearing") on the
Motion for Summary Judgment [Doc. # 14] ("Motion for Summary
Judgment"), filed on October 7, 2016, by Plaintiffs Gully Brook

1

Revocable Trust and Tasha's Way Revocable Trust ("Plaintiffs"). Jonathan Keeler appeared on behalf of Plaintiffs and Stephanie Osborne appeared on behalf of Defendant. The Court has considered the record, the arguments of counsel, the Affidavit of Matthew Flyer [Doc. # 14-1] ("Flyer Affidavit"), Plaintiffs' Brief in Support of Motion for Summary Judgment [Doc. # 14-2] ("Plaintiffs' Brief"), the Response and Memorandum of Law in Opposition to Motion for Summary Judgment [Doc. # 15] ("Defendant's Response" or "Defendant's Brief") filed by David G. Cook ("Defendant"), and the Affidavit of David G. Cook in Response to Motion for Summary Judgment [Doc. # 15-3] ("Cook Affidavit"). For the reasons set forth herein, the Court will deny the Motion for Summary Judgment.

## I.   Background[1]

Pre-petition, Plaintiffs entered into two written contracts (the "Contracts") with MCF Builders of Chatham County, LLC ("MCF") for two new building construction projects (the "Projects") where MCF acted as the builder and general contractor. Defendant is the sole member, sole manager, and sole bookkeeper of MCF. [Doc. # 1, ¶ 8; Doc. # 8, ¶ 8]. The Projects consisted of the construction of a residence and a

---

[1] The background set forth below is based upon the documents, deposition testimony, and the record created in open court at the hearing in connection with summary judgment. The background shall not constitute findings of fact or partial summary judgment with respect to any facts set forth herein for purposes of trial.

pottery studio.   Each of the Contracts contained different amounts for costs and materials, based on the nature of each building, but the remaining material terms of both Contracts were identical.   Paragraph 10 in the Residence Contract for Building Construction [Doc. # 1-1, Ex. A] ("Residence Contract") and Paragraph 10 in the Pottery Studio Contract for Building Construction [Doc. # 1-1, Ex. B] ("Studio Contract") each provides that: "Funds shall be disbursed in monthly payments according to the payment schedule provided by the draw schedule."

Between January 30 and June 1, 2015, Plaintiffs signed and delivered five (5) checks in the aggregate amount of $266,088.00 (collectively, the "Funds") to Defendant as payments for construction of the Projects.   [Doc. # 1-1, pp. 51-55]. Plaintiffs made each check payable to "MCF Builders."   Id. Defendant personally made each payment request to Plaintiffs, processed each payment on behalf of MCF, and deposited each check into MCF's bank account at Branch Banking and Trust ("BB&T").   [Doc. # 1, ¶ 14; Doc. # 8, ¶¶ 14-19].   The first two payments made by Plaintiffs were deposits of 10% of the total contract amounts for the Projects.   [Doc. # 1-1, pp. 51-52]. Defendant deposited the first check ("Check One"), in the amount of $37,960.00 into MCF's BB&T account on January 30, 2015, and the second check ("Check Two"), in the amount of $12,300.00, on

3

February 9, 2015.  Id., pp. 51-52.  Defendant requested the remaining three payments, for the months of March, April, and May of 2015, through email.  See Plaintiffs' Ex. 2, 4, 6.

On Wednesday, March 11, 2015 at 1:38 p.m., Defendant stated in an email to Matthew Flyer, "Hey, if we can get our March draw that would be great. It will only be 5% for each project—clearing and permits. If you have time tomorrow we can look at how much more to clear." Plaintiffs' Ex. 6.  Plaintiffs complied with this request, and Defendant deposited the third check ("Check Three"), in the amount of $25,698.00, on March 13, 2015.  [Doc. # 1-1, p. 53].  On Sunday, April 12, 2015 at 3:02 p.m., Defendant requested another payment for the Projects, stating, "If I can get a draw for April that would be great, I was hoping to be able to get more than just foundations done but I think I should just say 5% for this month." Plaintiffs' Ex. 8.  Defendant deposited the fourth check ("Check Four"), in the amount of $25,130.00, on April 16, 2015.  [Doc. # 1-1, p. 54].

Plaintiffs made the fifth and final payment ("Check Five") to Defendant following a series of email communications that occurred on May 31, 2015.  In these emails, Defendant requested that the Plaintiff deliver a check for $165,000.00.  He explained his need for the funds in two emails.  In the first email at 12:39 p.m., Defendant stated, "Can I pick up a check tomorrow, I am anxious to get deposits to framers, electricians,

4

plumbers and geo guys." Plaintiffs' Ex. 2. Robyn Flyer[2] responded to this email saying, "I THINK HE HAS A CASH FLOW PROBLEM." Id. Ms. Flyer continues by pointing out that, if Plaintiffs paid the requested draw, they would have paid more than half the price of the house with little to show for it. Id. Defendant responded to Ms. Flyer's email as follows:

> In a way you are right that there is always a cash flow issue. We currently have 6 projects going valued at around 2 million. I do not have enough to prepay for all the expenses and keep everything moving. I based this draw on what I see getting done in the next month. I would like to put down deposits as soon as I can on the items mentioned below. I know things have moved slowly from both my side and the county's and would like to speed things up.

Id. Subsequently, at 2:42 p.m., Defendant sent another email listing materials and labor MCF required to continue construction on the projects including, inter alia, framing materials, windows, cabinets, and various subcontractors.[3] Id. In response to Robin Flyer's inquiry into the approximate costs of some of the items listed above, Defendant sent another email, at 2:59 p.m., assigning dollar amounts to windows, doors, an

---

[2] According to the copies of the checks, Robyn Flyer is a co-trustee of the Gully Brook Revocable Trust. [Doc. #1-1, pp. 51-55].

[3] The full text of the May 31, 2015, 2:42 p.m. email:
For a little more detail. The amount I asked for was from the draw sheet but I will have to pay following.
Framing mats, 30k+ (starts arriving weds)
Framers 35k, (15 k to start)
Windows-50% upfront, would like to order as soon as possible
Hvac, 50% upfront
Electrical, plumbers, payment as soon as they start
Cabinets, 50% upfront, would like to order as soon as possible

HVAC system, plumbers, electricians, and metal roofing material.[4] Id. Following these communications, Plaintiffs delivered Check Five in the amount of $165,000.00 to Defendant on June 1, 2015, which Defendant deposited in MCF's BB&T account that same day. [Doc. # 1-1, p. 55].

In his testimony at a 2004 Examination taken prior to the commencement of this adversary proceeding, Defendant confirmed a number of deposits and withdrawals on MCF's BB&T account immediately following this deposit. See Defendant's 2004 Examination [Doc. # 14-2] (the "2004 Examination"), pp. 69-95. The funds from Check Three became available in MCF's BB&T account on March 13, 2015. Id., p. 93. That day, Defendant wrote checks addressed to multiple third parties, including Tysor Plumbing, DQ Electric, ASE, Gulick Excavating, Lance Greene, and Goldston Clearing, for at least $21,210.00. Id., pp. 91-92. When asked whether these payments made on March 13, 2015, related to the Projects, Defendant either conceded that the disbursements were for other projects, or that he did not know the purpose of the withdrawal but doubted that it was for

---

[4] The full text of the May 31, 2015, 2:59 p.m. email:
  Some of that will depend on final design of course but cabinets,
  Aprox-30k
  Windows -28k
  Doors-7k
  Hvac -40k
  Plumbers-20k
  Electricians-25k
  Metal roofing, material only 8k
  Those are Aprox. Amounts on both buildings.

either of the Projects.   Id.   Defendant also confirmed that by March of 2015 he had received approximately $75,000.00 from Plaintiffs through Checks One, Two, and Three, but estimated that less than $10,000.00 had been spent on the Projects.   Id., pp. 95-96.   On April 15, 2015, following the delivery of Check Four, Defendant wrote checks to Mozier Builders, Lauren Rivers Agency, Hugo Sanchez, Eric Pugh Concrete, Luis Enterprise, and himself.   Id., pp. 99-102.   Like the transactions following the March Email and Check Three, Defendant repeatedly testified that the payments made out of MCF's account on April 15 were not related to the Projects.   Id.   Defendant confirmed that by the time the funds in Check Four were available in MCF's account in April, Plaintiffs had paid MCF in excess of $100,000.00 for work on the Projects, of which Defendant testified "very, very little" was used to fund work on the Projects.   Id., p. 102.   On June 1, 2015, Plaintiffs delivered Check Five to Defendant. That same day, Defendant wrote checks to over a dozen third party entities for payments totaling at least $90,000.00.   Id., pp. 70-77.   Again, like the transactions following the March and April Emails, Defendant testified that many of the payments disbursed were not related to the Projects.   Id.

    Although Plaintiffs did not make any further payments to MCF under the Contracts after June 1, 2015, the parties dispute when work on the Projects ceased.   Plaintiffs allege MCF

7

abandoned work on the pottery studio on August 21, 2015, and the residence on September 11, 2015; Defendant asserts work continued on the Projects through October of 2015. [Doc. # 1, ¶ 12; Doc. # 15, p. 8].

On October 22, 2015, Plaintiffs filed an action against MCF and Defendant in the North Carolina General Court of Justice, Superior Court Division, Chatham County, North Carolina (the "State Court"), styled Gully Brook Revocable Trust, et al. v. MCF Builders of Chatham County, LLC, et al., No. 15-CVS-816, [Doc. # 1-1, pp. 1-5] (the "State Court Action"). In the State Court Action, Plaintiffs moved for injunctive relief in the form of a temporary restraining order to freeze Defendant's accounts in the amount of $266,088.00. Id., pp. 56-59. The State Court entered an order granting a temporary restraining order for that amount, pending a hearing on November 5, 2015. Id., pp. 60-62. Neither MCF nor Defendant filed responsive pleadings in the State Court Action prior to filing their respective bankruptcy petitions. [Doc. # 1, ¶ 22; Doc. # 8, ¶ 27].

MCF filed a voluntary chapter 7 petition on October 29, 2015 [Case No. 15-81189, Doc. # 1]; Defendant filed likewise on November 4, 2015 [Case No. 15-81220, Doc. # 1]. Defendant listed Plaintiffs on Schedule F of his petition as holders of an unsecured, nonpriority, contingent, unliquidated, and disputed claim in the amount of $266,088.00.

Plaintiffs commenced this adversary proceeding by filing a Complaint [Doc. # 1] ("Complaint") on June 2, 2016, seeking a monetary judgment against Defendant in favor of Plaintiffs and requesting that the Court declare the judgment non-dischargeable pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), and (a)(6). The Complaint asserts that Plaintiffs have suffered damages as a result of MCF's breach of the Contracts as well as Defendant's fraudulent representations, misappropriation and/or theft of the Funds, and deliberate disregard of Plaintiffs' rights to obtain possession of the Funds. Defendant filed an Answer [Doc. # 8] ("Answer") on August 4, 2016. In the Motion for Summary Judgment, Plaintiffs request the Court determine there is no genuine issue of material fact regarding Plaintiffs' claims for fraud and grant summary judgment on these claims as a matter of law.

## II.  Jurisdiction

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). The parties have consented to this Court entering final judgment as to all matters raised in the pleadings, see Amended Joint Scheduling Memorandum [Doc. # 10],

Section D(1), and this Court has constitutional authority to enter final judgments herein.

### III. Standard of Review

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, the Court must construe the "facts and inferences drawn therefrom in the light most favorable to the nonmoving party." Seabulk Offshore, Ltd. V. American Home Assur. Co., 377 F.3d 179, 183 (4th Cir. 2001). The party moving for summary judgment has the initial burden of proving the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. Celotex, 477 U.S. at 323. Once this initial burden has been met, the nonmoving party must then set forth specific facts sufficient to raise a genuine issue for trial. Matsushita Elect. Indus. Co., Ltd. V. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

The Court also may consider any evidence in the record or submitted by the parties if it would be possible to introduce the evidence at trial. See Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact

cannot be presented in a form that would be admissible into evidence."); see also Celotex, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). What matters is not that the parties submit evidence in support or opposition to the motion in an admissible form, but that the "substance or content of the evidence ... be admissible . . . ." 11 James Wm. Moore et al., Moore's Federal Practice ¶ 56.91[2] (3d ed. 2014). Moreover, if a party fails to object to the inadmissibility of evidence offered in support of a motion for summary judgment, the Court may deem any objection to admissibility waived and consider the evidence. See Fed. R. Evid. 103(a); see also Local Rule 7056-1(c) ("All facts set forth in the statement of the movant shall be deemed admitted for the purpose of the motion for summary judgment unless specifically controverted by the opposing party.").

## V. Discussion

### A. Plaintiffs' First Cause of Action - Dischargeability Under 11 U.S.C. § 523(a)(2)

Section 523 of the United States Bankruptcy Code excepts from an individual debtor's discharge "any debt . . . for money, property services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

11

>(A) false pretenses, a false representation, or actual
>fraud, other than a statement respecting the debtor's
>or an insider's financial condition . . . .

11 U.S.C. § 523(a)(2).  The elements necessary to except a debt from discharge under Section 523(a)(2) are: (1) that the debtor made a representation; (2) that the debtor knew the representation was false at the time it was made; (3) that the debtor intended to deceive the creditor; (4) that the creditor relied on the representation; and (5) that the creditor sustained a loss as a result of that reliance.  See In re Campbell, 545 B.R. 875, 886 (Bankr. M.D.N.C. 2016) (citing In re Casper, 466 B.R. 786, 793 (Bankr. M.D.N.C. 2012); In re Highfill, 336 B.R. 701, 706 (Bankr. M.D.N.C. 2006)). Nevertheless, Plaintiffs must first establish the existence of an underlying debt.

**1.   The Debt**

Before the Court undertakes an analysis of whether the elements exist to except a debt from discharge under Section 523, the Court must first determine that there is a debt to be excepted from discharge.  The exception to discharge itself does not make a debtor liable to a creditor, and therefore such liability must be established under non-bankruptcy law.  See Campbell, 545 B.R. at 886; see also In re Eisaman, 387 B.R. 219, 224 (Bankr. N.D. Ind. 2008) ("[T]he first step in determining whether or not a particular debt is dischargeable is to make

12

certain that there is, indeed, a debt owing by the debtor to the creditor.").  If a party does not establish the existence of an obligation under non-bankruptcy law, then "there is no debt which could be excepted from the scope of the debtor's discharge."  <u>Eisaman</u>, 387 B.R. at 224.  To determine the existence and amount of the debt, the Court must apply relevant non-bankruptcy law.  See <u>In re Janssens</u>, 449 B.R. 42, 66 (Bankr. D. Md. 2010), <u>aff'd sub nom</u>, <u>Janssens v. Freedom Med., Inc.</u>, No. CIV. JFM-10-2042, 2011 WL 1642575 (D. Md. Apr. 29, 2011).  In a case such as this one, the court will look to applicable state law.  <u>Id.</u> (quoting <u>Grogan v. Garner</u>, 498 U.S. 279, 283-84, 111 S.Ct. 654, 657 (1991), for the proposition that "[t]he validity of a claim is determined by rules of state law").

In the Motion for Summary Judgment, Plaintiffs assert only two bases for Defendant's liability under North Carolina law: false pretenses and actual fraud.[5]  [Doc. # 14-2, pp. 6-10].

---

[5] Although the Complaint does not assert any claims for relief other than dischargeability and punitive damages, it contains allegations of actual fraud and fraudulent misrepresentation.  [Doc. #1, ¶¶ 17-20].  The Complaint additionally refers to MCF's breach of the Contracts, <u>id.</u>, ¶ 18, and alleges that Defendant should be held personally liable for the obligations of MCF as his alter ego or mere instrumentality.  <u>Id.</u>, ¶¶ 16-18.  In proper instances and after trial on the merits, the Court has discretion to construe pleadings in order to arrive at the most equitable result under the circumstances.  Under Rule 8(e), the Court must construe pleadings so as to do justice, and under Rule 54(c), the Court should "grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  <u>See</u> Fed. R. Civ. P. 8(e); Fed. R. Civ. P. 54(c).  Nevertheless, since the Plaintiffs have not attempted in their Motion for Summary Judgment to establish any contractual liability, requested that the Court pierce the corporate veil, or attempted to show any portion of such contractual damages were obtained by false pretenses, false representation, or actual fraud as

Therefore, for purposes of summary judgment, the Court will consider solely whether Plaintiffs have established a debt for false pretenses or actual fraud under North Carolina law.[6]

**2. False Pretenses**

Plaintiffs have not cited, and the Court has not located, any case in which North Carolina courts have recognized an independent tort for "false pretenses."[7]  Federal courts should not recognize claims for relief based upon state law where those claims are previously unrecognized in the applicable state courts.  See, e.g., Breeden v. Richmond Community College, 171 F.R.D. 189, 202-03 n.15 (M.D.N.C. 1997) ("It is well-recognized that when deciding a question of state law, federal courts must rule upon state law as it exists, and not surmise or suggest its

---

[6] This Court previously has construed pleadings in attempting to determine liability under North Carolina law in a dischargeability context.  In re Campbell, the Court construed the Plaintiffs' reliance on Section 523(a)(2) as supporting a requisite underlying state law claim for actual fraud.  545 B.R. 875, 886 (Bankr. M.D.N.C. 2016).  Because the Plaintiffs in Campbell did not plead any theory of liability under non-bankruptcy law, the Court was left to guess at the Plaintiffs' intent and infer, through the pleadings, evidence, and context of their allegations, the theory of liability upon which the Plaintiffs relied.  Id.  Although the elements of actual fraud under North Carolina law and non-dischargeability under § 523(a)(2) are closely related and overlap in some instances, the elements are not identical.  Therefore, nothing in Campbell or in this opinion should be construed to require that a party must prove that an underlying debt meets the elements of actual fraud under North Carolina law in order to be non-dischargeable under § 523(a)(2).  Nevertheless, the debt sought to be excepted from discharge must be established by some theory of liability under non-bankruptcy law before the court can consider dischargeability of that debt under the provisions of § 523.

[7] The crime of false pretenses is set out in Section 14-100 in the North Carolina General Statutes, but the statute does not create civil liability. See N.C.G.S. § 14-100.

contemplated by  § 523(a)(2), it is unnecessary for the Court to address those claims at this time.

expansion." (citing, <u>inter</u> <u>alia</u>, <u>Burris Chemical, Inc. v. USX</u> <u>Corp.</u>, 10 F.3d 243 (4th Cir. 1993))). Therefore, Plaintiffs have failed to establish liability for false pretenses under North Carolina law.

### 3. Actual Fraud

To establish a claim for fraud under North Carolina law, a plaintiff must show: (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) that does in fact deceive; and (5) results in damage to the injured party. <u>Ragsdale v. Kennedy</u>, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Plaintiffs contend they have met their burden of proof on each element of actual fraud. [Doc. # 14, p. 7].

### a. False Representation or Concealment of a Material Fact

A cause of action for actual fraud in North Carolina may be based on an affirmative misrepresentation of a material fact or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose. <u>See</u> <u>Hardin v. KCS</u> <u>Int'l, Inc.</u>, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009) (quoting <u>Harton v. Harton</u>, 81 N.C. App. 295, 297, 344 S.E.2d 117, 119 (1986)). To constitute a false representation, such representation must be definite and specific, but the "specificity required depends upon the tendency of the

statements to deceive under the circumstances." Ragsdale, 286 N.C. at 139, 209 S.E.2d at 500. A false representation is material when "it deceives a person and induces him to act." Keith v. Wilder, 241 N.C. 672, 675, 86 S.E.2d 444, 446 (1955). Similarly, an omission or concealment of a fact is material if, had the party known the fact, it would have influenced that party's judgment or decision to act. See Latta v. Rainey, 202 N.C. App. 587, 599, 689 S.E.2d 898, 909 (2010). Such an omission, constituting silence in the face of a duty to speak, is akin to an affirmative false representation for the purposes of actual fraud. See Setzer v. Old Republic Life Ins. Co., 257 N.C. 396, 399, 126 S.E.2d 135, 137 (1962).

Construing the facts in the light most favorable to Defendant, there is a genuine issue of material fact whether Defendant's statements are the type that can support a claim for fraud under North Carolina law. In order for Defendant's representations to support a claim for fraud, they must be specific representations regarding an existing fact. See, e.g., Phelps-Dickson Builders, LLC v. Amerimann Partners, 172 N.C. App. 427, 437, 617 S.E.2d 664, 671 (2005). Plaintiffs contend that Defendant's statements and actions, taken together, conclusively establish that Defendant misrepresented in the emails that he would use any funds paid by Plaintiffs solely for the enumerated expenses for the Projects. The record at this

16

stage of the case, taken in a light most favorable to Defendant, is insufficient for the Court to agree with that conclusion as a matter of law.

The emails do not make definitive statements that any funds will be used solely for purposes of the Projects. In fact, Defendant specifically concedes that he is having cash flow problems and "currently ha[s] 6 projects going valued at around 2 million." See Plaintiffs' Ex. 2. He further conceded that he did "not have enough to prepay for all the expenses and keep everything moving." Id. Although the Court has concerns in this case regarding the representations reflected in the email communications, at this stage, the Court must construe the facts in a light most favorable to Defendant. Construed in this light, Defendant conceded in the emails that any payments would be used in his business to "keep everything moving." Id. At trial, the Court will have to consider the credibility of the witnesses and surrounding circumstances to determine the context and import of these statements, but for purposes of summary judgment, these communications do not establish a sufficiently specific misrepresentation.

The statements reflected in the emails not only are insufficiently specific at this stage, but they also are not statements of an existing fact. Instead, even if construed as requested by the Plaintiffs, the Defendant's statements

17

represent promises to take future action, i.e., to apply the payments to expenses for the Projects.  Generally, a promissory representation is insufficient to support an action for fraud. See Johnson v. Phoenix Mut. Life Ins. Co., 300 N.C. 247, 255, 266 S.E.2d 610, 616 (1980).  Nevertheless, such a representation may constitute actionable fraud when made with the intent to deceive the promisee, and the promisor, at the time of making the promise, had no intent to comply.  Id.

Plaintiffs contend they have demonstrated that Defendant had no intention of using the Funds on the Projects when requesting the payments by showing that the proceeds of the payments immediately were disbursed to third parties for expenses unrelated to the Projects.  Defendant counters that he never made any specific representation that the Funds would be used for the Projects, and that he was not required to do so under the terms of the Contracts or state law.  See Doc. # 15, p. 4.  Under these circumstances, Plaintiffs have failed to establish for purposes of summary judgment that Defendant made sufficiently specific representations in the context of the relationship of the parties to support a claim for fraud.  To be sure, if the Court finds that the representations were sufficiently specific when considering all evidence at the trial, including the credibility of the witnesses, the immediate transfer of the funds for other purposes is circumstantial

evidence of Defendant's intent not to perform at the time of his representation.  Those issues, however, are best left for trial.

### b.  Reasonably Calculated to Deceive and Made with the Intent to Deceive

In North Carolina, the requisite scienter to commit fraud "embraces both knowledge <u>and</u> an intent to deceive, manipulate or defraud." <u>Myers & Chapman, Inc. v. Thomas G. Evans, Inc.</u>, 323 N.C. 559, 568, 374 S.E.2d 375, 391 (1988) (emphasis in original); <u>see also</u> <u>RD & J Properties v. Lauralea-Dilton Enterprises, LLC</u>, 165 N.C. App. 737, 745, 600 S.E.2d 494, 498-99 (2004) ("The required scienter for fraud is not present without both knowledge and an intent to deceive, manipulate, or defraud."). A party seeking to establish the existence of scienter in the context of fraud must meet a high burden of proof.  <u>See</u> <u>Media Network, Inc. v. Long Haymes Carr, Inc.</u>, 197 N.C. App. 433, 451, 678 S.E.2d 671, 683 (2009).  This is particularly so because a party's fraudulent intent is generally within the exclusive knowledge of that party and therefore must, by necessity, be proved by circumstantial evidence.  <u>See</u> <u>Lewis v. Blackman</u>, 116 N.C. App. 414, 419, 448 S.E.2d 133, 136 (1994). Fraudulent intent "usually is not shown by direct evidence but generally is proven by circumstances [often by] presenting evidence of some motive on the part of the perpetrator." <u>Latta v. Rainey</u>, 202 N.C. App. 587, 600, 689 S.E.2d 898, 909 (2010)

(quoting <u>McLamb v. McLamb</u>, 19 N.C. App. 605, 610, 199 S.E.2d 687, 690, <u>cert. denied</u>, 284 N.C. 424, 200 S.E.2d 660 (1973)). Given the complexities of imputing intent onto a party, North Carolina courts have held that the question of whether a party acts with the requisite scienter for fraud is generally a question of fact for the jury. <u>See Rainey</u>, 202 N.C. App. at 600, 689 S.E.2d at 909; <u>Pearce v. American Defender Life Ins. Co.</u>, 316 N.C. 461, 468, 343 S.E.2d 174, 178-79 (1986) (affirming a directed verdict was proper against the plaintiff's fraud claim for failure to meet the burden of proof for scienter); <u>Malone v. Topsail Area Jaycees, Inc.</u>, 113 N.C. App. 498, 502-03, 439 S.E.2d 192, 194-95 (1994) (affirming summary judgment was appropriately entered for the defendant on the issue of scienter).

Here, construing the facts in the light most favorable to the non-movant Defendant, Plaintiffs have not met their burden of proof on the element of scienter. Plaintiffs rely primarily on Defendant's testimony taken during the 2004 Examination in an attempt to show fraudulent intent. In that context, Defendant testified as follows:

> **Q.** And this check was so much more than the previous ones, I mean, $165,000. You had to specifically tell Matt and Robin that you needed it for their project in order to get it; is that correct?
> **A.** It--- Yeah, I think I told them that, yes, cash flow was an issue and that, yes, I hoped to, with that

money, be able to really just kill it and knock out
all of our projects, yes.
**Q.**   That's not what the e-mail says.   I mean, your
May 31st e-mail says set amounts for particular---
**A.**   Yes.
**Q.**   ---subs and suppliers for the trust projects;
correct?
**A.**   Yes.
**Q.**   And Matt and Robin wouldn't have given you that
money if you just said you needed it to keep your
business afloat; is that correct?
**A.**   That's' – yes, that's--- I'm sure they wouldn't
have.

[Doc. # 14-2, p. 36, 2004 Examination, p. 79].   This testimony

alone is insufficient to establish fraudulent intent as a matter

of law, and an inference of fraudulent intent at the summary

judgment stage is rare.   See Davidson v. Knauff Ins. Agency,

Inc., 93 N.C. App. 20, 31, 376 S.E.2d 488 (495) (1989) (holding

the issue of intent is inappropriate for summary judgment when

contradictory inferences could be drawn from affidavits); Girard

Trust Bank v. Belk, 41 N.C. App. 328, 339, 255 S.E.2d 430, 437

(1979) (explaining summary judgment is inappropriate for

fraudulent intent due to its inability to resolve issues of

credibility).   A genuine issue of material fact remains as to

Defendant's subjective intent in making the representations and

therefore the Court will reserve the issue of scienter for

trial.

### c.   Reliance

Under North Carolina law, "any reliance on the allegedly

false representations must be reasonable."   Forbis v. Neal, 361

21

N.C. 519, 527, 649 S.E.2d 382, 387 (2007). Generally, where a party fails to make any kind of independent investigation, reliance on a representation is deemed unreasonable. See Little v. Stogner, 162 N.C. App 25, 30, 592 S.E.2d 5, 9 (2004). However, a party to whom a positive and definite representation is made is entitled to rely on that representation if such representation is "of a character to induce action by a person of ordinary prudence." Id. (quoting Kleinfelter v. Developers, Inc., 44 N.C. App 561, 565, 261 S.E.2d 498, 500 (1980)). The reasonableness of a party's reliance is usually a question left for the finder of fact at trial, but a court may grant summary judgment with respect to reliance when "the facts are so clear that they support only one conclusion." RD & J Properties v. Lauralea-Dilton Enterprises, LLC, 165 N.C. App 737, 746, 600 S.E.2d 492, 499 (2004).

Here, the facts do not rise to a level of clarity so as to support summary judgment in favor of Plaintiffs. Construing the facts in a light most favorable to Defendant, a genuine issue of material fact exists as to the reasonableness of Plaintiffs' reliance on Defendant's representations. In the Flyer Affidavit, Matthew Flyer states it was his reliance on Defendant's representations that caused him to transfer funds to MCF. [Doc. #14-1, p. 3]. Nevertheless, on May 31, 2015, Robin Flyer wrote to Matthew Flyer, before the delivery of Check Five,

that Plaintiffs had been asked to pay over half of the total cost of the Projects and had little to show for it.   See Plaintiffs' Ex. 2.   Defendant, in the next email, states he has a "cash flow issue" and that MCF does not have the funds to be able to continue to work on all of the projects simultaneously. Id.   There is no further indication in the record, aside from the pleadings, that Plaintiffs' reliance on Defendant's emails was reasonable.   As such, the Flyer Affidavit and the statements made in the email communications alone do not sufficiently establish Plaintiffs' reasonable reliance as a matter of law. Although the Court can consider such evidence, draw inferences, and make such findings at trial, it is inappropriate to do so at summary judgment, in which context the Court must construe facts in each instance in a light most favorable to the non-moving party, drawing all justifiable inferences in its favor.   See Murrell v. Ocean Mecca Motel, Inc., 262 F.3d 253, 255 (4th Cir. 2001); see also St. Paul Reinsurance Co., Ltd. V. Rudd, 67 Fed.Appx.190, 196, 2003 WL 21387200, *4 (4th Cir. 2003) ("It is generally inappropriate for a court to make findings of fact in summary judgment proceedings.   Instead, the court is obliged to accept and view the facts in the light most favorable to the non-movant.").   Plaintiffs have not established this element for purposes of summary judgment.

### d.    Damages

To establish the final element of actual fraud in North Carolina, Plaintiffs must show that they suffered damages because of their reliance on Defendant's representations.    See Wall v. Fry, 162 N.C. App. 72, 79, 590 S.E.2d 283, 287 (2004). The extent of damages in a fraud case amounts to the difference in what was promised through a false representation and what was actually received.    See Collier v. Bryant, 216 N.C. App. 419, 431, 719 S.E.2d 70, 80 (2011).    The parties dispute the date on which Defendant's work on the Projects ceased, and a genuine issue of material fact remains as to the extent of the damages suffered, if any, and the extent of the damages obtained by false pretenses, false representation, or actual fraud.    The Court will reserve this issue for trial.

## B.    Plaintiffs' Remaining Causes of Action

In the Motion for Summary Judgment, Plaintiffs also seek an exception to discharge pursuant to §§ 523(a)(4) and (a)(6), as well as an award of punitive damages under N.C.G.S. § 1D. Because, as discussed supra, Plaintiffs have not established under non-bankruptcy law any debt sought to be excepted from discharge in this adversary proceeding, the Court will reserve for trial Plaintiffs' remaining causes of action.

24

## VI.  Conclusion

For the reasons set forth herein, IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that the Plaintiffs' Motion for Summary Judgment is denied.

[End of Document]

## <u>Parties to be Served</u>

**Gully Brook Revocable Trust**
c/o James R. Hundley
P.O. Drawer 2086
High Point, NC 27261-2086

**Tasha's Way Revocable Trust**
c/o James R. Hundley
P.O. Drawer 2086
High Point, NC 27261-2086

**Jonathan Keeler**
Wyatt Early Harris Wheeler LLP
1912 Eastchester Dr.
Suite 400
High Point, NC 27265

**David Cook**
468 Deer Path
Chapel Hill, NC 27516

**Stephanie Osborne**
P.O. Box 2208
Chapel Hill, NC 27514-2208

**William Miller**
Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401